PARIENTE, J.,
concurring in part and dissenting in part.
I concur with much of the majority opinion, and echo its commendation of the Florida Board of Bar Examiners (“Board”) for its ongoing efforts to ensure the competency of attorneys that we admit into The Florida Bar. I agree with the amendments to all of the proposed rules except for rule 4-26.2 regarding raising the passing score. I support the important work of the Board in ensuring that attorneys licensed in this State demonstrate competence upon their initial entry to practice, as well as the important work of The Florida Bar, which provides the continuing education and monitoring of all attorneys necessary to ensure the high quality of an increasingly diverse Bar.
I certainly agree with the majority that the Board has “the important responsibility of safeguarding the interests of all Floridians,” majority op. at 246, and I am certain that the Board’s intent is to improve the quality of those attorneys licensed in this State. When all is said and done, however, the buck stops with this Court. With all due respect for the views of my colleagues, I disagree with the majority’s statement that without raising the pass/fail score of the Bar examination, “the people of the State of Florida would be placed at risk.” Majority op. at 249. Accordingly, I write separately to express my serious reservations about the necessity of raising the passing score from 131 to 136 at this time.
My concerns are threefold. First, there is no indication that increasing the score to 136 will lead to higher attorney performance or proficiency. Correspondingly, there is no indication that the current passing score is not an appropriate passing score to ensure minimum qualifications.
Second, I am concerned that we are placing too much reliance on the 1999 *252 studies performed by Dr. Klein, the expert hired by the Board, as the justification for setting a new and significantly higher passing score. Commentators have observed that the Klein methodology has a “fundamental flaw that produces an arbitrary passing score” in that it confuses the percentage of passing essays with the percentage of passing test takers. See Deborah J. Merritt et al., Raising the Bar: A Social Science Critique of Recent Increases to Passing Scores on the Bar Exam, 69 U. Cin. L.Rev. 929, 931, 950-65 (2001). Recently, after the Minnesota Board of Law Examiners received a critique by another expert of a study done by Dr. Klein, the Minnesota Board withdrew its recommendation to the Minnesota Supreme Court to raise the passing score. Although I would not want to make this a battle of the experts, the fact that other experts have called into question aspects of the Klein study suggests to me an additional reason to proceed cautiously before raising the passing score.
Third, like many of those who filed comments opposing an increase in the pass rate, including Board Member Noel G. Lawrence, the Society of American Law Teachers, the Florida Chapter of the National Bar Association, the George Edge-comb Bar Association, and six Florida law school deans, I am very concerned about the potential adverse effect this change could have on minorities. Indeed, it is not clear what effect an increased passing score will have upon varying minority groups, nor is it clear how this will affect racial disparities in the passing scores. In this regard-, I cannot agree that the majority’s hypothetical application of the new standards to examination results by test-takers from only two of the state’s law schools demonstrates that the increase will have no adverse racial impact. See majority op. at 250 n. 4. Confining results to examinees from individual law schools creates an unreliably small sample size.
In fact, applying the new standards to statewide results from the February 2000 and July 2000 examinations would have increased the already existing disparity in the pass rates between minority first-time test takers and all first-time test takers generally. On the February 2000 examination, minority pass rates for first-time test takers would have declined by 10 percent at a score of 133 and by 16 percent at a score of 136, compared to declines of 5 and 13 percent for all first-time test-takers. On the July 2000 examination, minority pass rates for first-time test takers would have declined by 5 and 12 percent at the new passing scores, compared to 4 and 10 percent declines for all first-time test takers. Even at a passing score of 131, first-time minority test-takers passed these examinations at much lower percentages than all first-time test takers, 58 to 71 percent on the February 2000 examination and 68 to 79 percent on the July 2000 examination. Combined results for first-time test takers in the two examinations administered in 2001 reflect greater declines for black first-time test takers than for whites. The pass rate for blacks would have declined by 6 percent at a passing score of 133 and 14 percent at a passing score of 136, compared to a 4 percent decline at a score of 133 and a 11 percent decline at a score of 136 for white test-takers.
As stated in the law review article cited above,
[Tjhere is substantial reason to fear that raising bar passing scores will, in fact, have a disproportionate impact on minority members. In general, increased passing scores on the bar exam affect minority applicants more than white ones. In other words, the gap in passing rates between minority and white *253 applicants is likely to grow as passing scores go up and passing rates fall. As Klein himself has recognized, “[t]he size of the difference in bar passage rates between whites and minority applicants depends on several factors,” and one of these factors is “the relative stringency of the state’s pass/fail standard.” In particular, “[sjtates that have relatively high passing rates tend to have smaller differences among groups than other states (because all groups have high rates when standards are low).” As a general matter, therefore, raising the bar passing score (and decreasing the passing rate) is likely to increase the gap between whites’ and minorities’ success rates.
Merritt et al., supra, at 966-67 (footnotes omitted). The authors conclude that an increase in the passing score will extend existing discrepancies, a result which is contrary to public policy at a time when the profession has embraced the need for diversity. Id. at 967.
In sum:
The basic issue is the choice of an appropriate passing score. Raising the passing score is very likely to increase failure rates and to have some adverse impact on groups with relatively lower scores. If the change is necessary in order to ensure that new lawyers are minimally qualified, the change seems justified. If the change is not necessary, it does not seem justified.
Michael T. Kane, Review of the Standard-setting Study of the July 1997 Minnesota Bar Exam 25 (August 2000) (emphasis supplied). I see no indication that changing the passing score from 131 to 136 is necessary to ensure that new lawyers are minimally qualified. Thus, I dissent from the raising of the passing score at this time and urge that this matter be returned to the current Board for further review, including a determination as to whether the current Bar examination testing procedures in fact measure the skills necessary to competently and professionally represent the citizens of this State.
QUINCE, J„ and SHAW, Senior Justice, concur.
APPENDIX
1-14.1 Purpose. The primary purpose of the character and fitness screening before admission to The Florida Bar aréis to protect the public and safeguard the judicial system.
1-65 Disclosure of Information. Unless otherwise ordered by the Supreme Court of Florida, the Chair of the Board, or the presiding officer at a hearing before the Board, nothing in these rules shall prohibit any applicant or witness from disclosing the existence or nature of any proceeding under rule 3 or from disclosing any documents or correspondence served on, submitted by, or provided to the applicant or witness.
1-70 Immunity and Privilege
1-71 Board and Employee Civil Immunity. The Board of Bar Examiners and its members, employees, and agents are immune from all civil liability for damages for conduct and communications occurring in the performance and within the scope of their official duties relating to the examination, character and fitness qualification, and licensing of persons seeking to be admitted to the practice of law.
1-72 Immunity and Privilege for Information. Records, statements of opinion, and other information regarding an applicant for admission to the Bar, communicated without malice to the Board of Bar Examiners, its members, employees, or agents by any entity, including any person, firm, or institution, are privileged, and civil *254 suits for damages predicated thereon may not be instituted.
2-10 Application Qualifications. To seek admission to The Florida Bar, a person must meet the eligibilityapplication qualificationsand, file the appropriate applications and fees as set out in this rule, and comply with Eulesrules 3 and 4.
2-11 Technical Competence.- All applicants seeking -admission — to----The—Florida Bar shall produce satisfactory evidence of technical competence through.successful completion of the Florida Bar Examination as-described in Rule 4.
2-11.1 E ducational-Qualification. — To be-admitted into the General — Bar-E-xam-i-nation-and ultimately recommended for admission-to The Florida Bar, an applicant must have-received-the-degree-of Bachelor-of Laws or Doctor-of Jurisprudence from an accredited law-school (as defined in 4-13.2) at a time when the law school was accredited or-withln-l-2-months of accreditation-or be found educationally-qualified by the Board under- the alternative method of educational qualification. — Except as provided- in Rule-2 — l-l-^-none of the following shall be substituted for the required degree-from-an-accredited law school:
(a) private study, correspondence school or law office training;
(-b)-age-or-experience;
(c) waived or lowered standards of legal training for particular-persons or groups.
2-11.2 Alternative Method of Educational Qualification. — For applicants not meeting the educational qualification above, the following requirements shall be met: (1) -evidence-as-the Board may require.that the applicant was engaged in the practice of law in the District of Columbia or in other states of the United States of -America, or in practice in federal courts of the United States or its territories, possessions--or- -protectorates — for-at least-10 years, - and was in good standing-at the bar of- said jurisdictions--in-.which-the-tive compilation of the work product in the field-of-law-ahowi-ng-fhe-seope-and-eharae-ter of the applicant’s previous-experience and practice-at-the-bar, includlng-samples of-fehe-q-ualiiy-of-the-applicanfe-work — suelt-as pleadings, briefs, legal memoranda, contracts or other working papers which the applicant considers illustrative of the appli-training. — The representative compilation of-the-work product-shall-be-confined to the applicant’s most recent 10 years of praetiee-and-shall-be-eomplete ■ and include all supplemental documents requested. — In evaluating academic and legal scholarship the-Board is clothed with broad discretion.
(a) Deadline for Filing Work Product. To-be-considered timely filed, the work product shall be complete with all supplemental documentation-as required and filed by the filing deadline of the General Bar Examination-as-set -out-in Rule 4. Work — Products—initially filed incomplete and-perfeeted-after the deadline shall not be-considered as timely filed. — Late or incomplete — 1work—products will be given eonsideration-for - admission into the next administration of the bar examination for wfaieh-the-deadline has not passed.
(b) Acceptance of-Work Product. — If-a thorough — review—of—the—representative compilation of the work-product and other materials — submitted—by—the—applicant shows-that the applicant is a lawyer of high ability and whose-reputation for professional^eompetence- is above reproach, the-Board may admit such applicant to the General Bar Examination-and- accept score reports from the National Conference of Bar-Examiners or its designee.
*255 2-13.25 Satisfaction of Court-Ordered Restitution and Disciplinary Costs. A person who was disbarred, resigned with pending disciplinary proceedings, or was suspended from a foreign jurisdiction shall not be eligible to apply except on proof of payment of any restitution and disciplinary costs imposed by a court in its order of disbarment, resignation, or suspension. Any request for relief from the terms of the order must be granted by the court that ordered the payment of restitution and disciplinary costs.
2-13.5 Found Unqualified by Board. An applicant or registrant who has been refused a favorable recommendation by the Board through the filing of Findings of Fact and Conclusions of Law which feas-have not been reversed by the Supreme Court of Florida shall not be eligible to seek admission to The Florida Bar until 2 years after the date that the Board delivered its adverse findings or suchlonger other period as may be set teyin the find-ingsFindings.
2-14 Petitions — for—Rehabilitation Reapplications for Admission. Any applicant or registrant who was refused a favorablereceived an unfavorable Board recommendationby the Board that has not been reversed by the Court mayr after-2 years-e-r-such longer period' as may be-set in the findings — file reapply for admission by filing a new Bar Application after 2 years or such other period as may be set in the Findings. The new application shall answer each item for the period of time from the filing of the original application and shall include current references, a fingerprint card,and the applicable feeT,-lF©l-lowing-the-comgletion of the Board’s new background investigation,- all - previously denied — applicants- shall appear before -a quorum of'the--Board for a formal hearing to present and a detailed written statement describing the scope and character of the applicant’s evidence of rehabilitation pursuant to the provisions of as required by Rule 3-13^-and The statement shall be sworn and may include corroborating evidence such as letters and affidavits. Thereafter, the formal hearing panelBoard shall determine at an investigative hearing, a formal hearing, or both, if the applicant’s evidence of rehabilitation wasis clear and convincing and shall make a recommendation pursuant toas required by Raierule 3-23.6. In determining whether an applicant should appear before an investigative hearing panel, a formal hearing panel, or both, the Board is clothed with broad discretion.
2-22 Deadline for Filing a Bar Application. The Bar Application must be filed not later than 90 days from the date of notice that success has been attained on all parts of the Florida Bar Examination (General Bar Examination and Multistate Professional Responsibility Examination' — ■ (MPRE)). Failure to comply with the filing deadline will result in required reapplication for admission to the Florida Bar Examination and successful completion of all of the examination.
2-28 Rehabilitation Application Fee for Reapplication for Admission Based on Rehabilitation. Applicants or registrants who are reapplying for admission and asserting rehabilitation from prior conduct that resulted in an adverse recommendation through Findings of Fact and Conclusions of Lawy shall file with the application the fee of $1800.00.
2-30.1 Filed with the Board. Any applicant or registrant who is dissatisfied with an administrative ruling of the Board that does not concerning character and fitness matters may petition the Board for reconsideration of the ruling. Applicants also may petition the Board for a suspension or waiver of any Bar admission rule or regulation. Petitions seeking a suspen *256 sion or waiver of any Board rule7 or regulation or order seeking review of an administrative ruling or action not related to a character and fitness recommendation should may be presented in the form of a letter, shall be filed with the Board within 60 days after receipt of written notice of the Board’s action complained of and shall be accompanied by a fee of $50.00.
2-30.2 Filed with the Court. Any applicant or registrant who is dissatisfied with ana Board administrative ruling of the Board that does not concerning character and fitness matters may, within 60 days after receipt of written notice of the Board’s action complained-ofthat ruling, file an appropriate petition with the Clerk of the Supreme Court of Florida for review of the Board’s action. If not inconsistent with these rules, the Florida Rules of Appellate Procedure shall be applicable to all proceedings filed in the Supreme Court of Florida. A copy of any suchthe petition shall be served upon the Executive Director of the Board. The Board shall have 25 days after the service of saidthe copy on the Executive Director in which to file a response to the petition and shall serve a copy of its response upon the applicant or registrant. The matter shall be disposed of as the Court directs.
3-10.1 Essential Eligibility Requirements. The Board considers the following attributes to be essential for all applicants and registrants seeking admission to The Florida Bar:
(a) Knowledge of the fundamental principles of law and their application.
(b) The ability to reason logically and accurately analyze legal problems.
(c) The ability to and the likelihood that, in the practice of law, one will:
(1)Comply with deadlines.
(2) Communicate candidly and civilly with clients, attorneys, courts, and others.
(3) Conduct financial dealings in a responsible, honest, and trustworthy manner.
(4) Avoid acts that are illegal, dishonest, fraudulent, or deceitful.
(5) Conduct oneself in accordance with the requirements of applicable state, local, and federal laws, regulations, and statutes; any applicable order of a court or tribunal; and the Rules of Professional Conduct.
penses» — I-f-the-Board-is-required-to-make further inquiry into the character and fitness of a registrant as provided by Rule 3-11;-then a fee of $125.00 shall be assessed.
3-23.6 Board Action Following Formal Hearing. Following the conclusion of a formal hearing, the applicant or registrant shall be notified promptly by the Board of its decision, which shall include one of the following recommendations:
(a) that the applicant or registrant has established his or her qualifications as to character and fitness;
(b) that the applicant be conditionally admitted to The Florida Bar in exceptional cases involving drug, alcohol, or psychological problems upon such the terms and conditions as are specified by the Board;
(c) that the applicant’s admission to The Florida Bar be withheld for a specified period of time not to exceed 2 years. At the end of the specified period of time, the Board shall recommend the applicant’s admission providing if the applicant has complied with all special conditions outlined in the Findings of Fact and Conclusions of Law;
(d) that the applicant or registrant has not established his or her qualifications as to character and fitness. In cases of deni *257 al, a 2-year disqualification period shall be presumed to be the minimum period of time required before an applicant or registrant may reapply for admission and establish rehabilitation. In cases involving significant mitigating circumstances, the Board shall have the discretion to recommend that the applicant or registrant be allowed to reapply for admission within a specified period of less than 2 years. In cases involving significant aggravating factors (including but not limited to material omissions or misrepresentations in the application process), the Board may-within its — shall have the discretion fur-ther to recommend that the applicant or registrant be disqualified from filing for reha-bilitationreapplying for admission for a specified period greater than 2 years up tobut not more than 5 years.
3-23.7 Findings of Fact and Conclusions of Law. In cases involving a recommendation other than under rule 3-23.6(a) above, the Board shall expeditiously issue its written Findings of Fact and Conclusions of Law. The Board’s findings shall be supported by competent, substantial evidence in the formal hearing record. The Board’s findings, conclusions, and recommendation shall be subject to review by the Court as specified under Sulerule 3-40.
The Board’s findings, conclusions, and recommendation shall be final if not appealed except in cases involving a favorable recommendation for applicants seeking readmission to the practice of law after having been disbarred or having resigned pending disciplinary proceedings. In those cases, the Board shall file a report containing its recommendation with the Court for final action by the Court. Admission to The Florida Bar for suehthose applicants shall only occur only by public order of the Court. All reports, pleadings, correspondence, and papers received by the Court in suehthose cases shall be public information and exempt from the confidentiality provision of Rulerule 1-61.
4-13 Educational-Qualifications Technical CompetenceJn order to submit to any part of the-General Bar Examination an applicant must be able to provide evidence at the time-of ■ submission to-ffae General Bar Examination of receipt-of-or completion of the — requirements for, the degree of Bachelor of Laws or Doctor of Jurisprudence — feem—an—accredited—law school or be found-educationally qualified under the alternative-method of educational qualification as provided in Rule 2-11.2. ■The-law degree must-have been received feem-an-accredited law school or withm-42 months — ef—accreditation.—An applicant may sit for the MRRE prior to graduation from law — school;—however, the requirements of-Rule 4-18.1 are applicable. All applicants seeking admission to The Florida Bar shall produce satisfactory evidence of technical competence through successful completion of the Florida Bar Examination.
4-13,1 Definition of Degree Requirements. — The term — completion of the requirements for the-degree”' refers to the time-when-completion of the-requirements for graduation is recorded in the office of the law school dean or administrator,
4-13.1 Educational Qualifications.
(a) Eligibility. To be eligible to submit to any portion of the Florida Bar Examination, an applicant must either
(1) complete the requirements for graduation or receive the degree of Bachelor of Laws or Doctor of Jurisprudence from an accredited law school or within 12 months of accreditation; or
(2) be found educationally qualified under the alternative method of educational qualification provided in rule 4-13.4.
*258 (b) Proscribed Substitutions. Except as provided in rule 4-13.4, none of the following shall be substituted for the required degree from an accredited law school:
(1) private study, correspondence school, or law office training;
(2) age or experience;
(3) waived or lowered standards of legal training for particular persons or groups.
4-13.3 Definition of Degree Requirements. The term “complete the requirements for graduation” refers to the time when completion of the requirements for graduation is recorded in the office of the law school dean or administrator.
4-13.4 Alternative Method of Educational Qualification.
(a) Applicants Not Meeting Educational Qualifications. For applicants not meeting the educational qualifications in rule 4-13.1, the following requirements shall be met:
(1) such evidence as the Board may require that the applicant was engaged in the practice of law for at least 10 years in the District of Columbia, in other states of the United States of America, or in federal courts of the United States or its territories, possessions, or protectorates, and was in good standing at the bar of the jurisdictions in which the applicant practiced; and
(2) a representative compilation of the work product in the field of law showing the scope and character of the applicant’s previous experience and practice at the bar, including samples of the quality of the applicant’s work, such as pleadings, briefs, legal memoranda, contracts, or other working papers which the applicant considers illustrative of the applicant’s expertise and academic and legal training. The representative compilation of the work product shall be confined to the applicant’s most recent 10 years of practice and shall be complete and include all supplemental documents requested.
(b) Deadline for Filing Work Product. To be considered timely filed, the work product shall be complete with all required supplemental documentation and filed by the filing deadline of the General Bar Examination as set out in rule 4. Work product initially filed incomplete and perfected after the deadline shall not be considered timely filed. Late or incomplete work product will be given consideration for admission into the next administration of the bar examination for which the deadline has not passed.
(c) Acceptance of Work Product. If a thorough review of the representative compilation of the work product and other materials submitted by the applicant shows that the applicant is a lawyer of high ability whose reputation for professional competence is above reproach, the Board may admit the applicant to the General Bar Examination and accept score reports from the National Conference of Bar Examiners or its designee.
(d) Board Discretion. In evaluating academic and legal scholarship under subdivision (a), the Board is clothed with broad discretion.
4-17 Special TestingTest Accommodations
. 4-17.1 Accommodations. Special tes-tingTest accommodations are provided by the Board at no additional cost to applicants.
4-17.2 Requests for Special Testing Test Accommodations. Applicants seek ing testing accommodations dae-4obecause of disability must file a written petition for accommodations accompanied by supporting documentation or such additional infor *259 mation as may be reasonably required on the forms supplied by the Board. The forms are available upon written request. Receipt of requests for speeial-testingtest accommodations and supporting documentation are subject to the deadline and late filing fees applicable to all examinees.
4-26.2 Pass/Fail Line. Effective from July 1, 2003 until June 30, 2004, Reach applicant must attain a scaled score of 484133 or better on Part A and on Part B under the individual method and an average of 434133 or better under the overall method, or such scaled score as may be fixed by the Court.
Effective July 1, 2004, each applicant must attain a scaled score of 136 or better on Part A and on Part B under the individual method and an average of 136 or better under the overall method, or such scaled score as may be fixed by the Court.
4-41 Exam Application and Supporting Documents. In order to be considered complete — eaehThe Exam Application (Form 1-A)t must be complete, sworn to,and notarized, and accompanied by:
4)(a) the appropriate applicant filing fee (application fee, postponement fee, or reapplication fee);
2)(b) a current 2" x 2" photograph;
3)(c) one complete set of fingerprints taken on a card provided by the Board and certified by an authorized law enforcement officer; and
4)(d) other supporting documents or additional information as may be required on the Form 1-A.
4-42.3 Deadline for Special Testing Test Accommodations. Petitions for accommodations and supporting documentation are subject to the examination filing deadlines. Applicants seeking special tes-tingtest accommodations are encouraged to file the examination application, petition, and supporting documents by the examination filing deadline to avoid examination late filing fees.
4-42.4 Cut-off Cutoff for gpeeial-Tes-tiugTest Accommodations. To avoid an undue burden upon the Board while it is making final preparations for the administration of the bar examination, a minimum amount of time is required for the orderly processing of a request for accommodations. Except for emergency petitions as designated by the Board, no request for special — testingtest accommodations shall will be processed if postmarked or received after February 1 for the February Examination or after July 1 for the July Examination.
4-52 Consequences of Violation of Rules. — If the Board-has cause to believe '•'that an applicant has-violated any of the rules set forth above-,-then such applicant's examination grades shall be-impounded-at the — direction of the Supreme — Court ■■■of Florida pending a-full-investigation by the Board. — The Board’s-investigations shall be conducted under the provisions of Rule 3r
4-534-52 Examination Proctors. The Board may from time to time elicitseek the assistance of other members of The Florida Bar in proctoring the bar examination.
4-64 Invalidation — of—Examination Resultslnvestigation of Exam-Related Conduct. Results of the General Bar Ex-ana-inatien-shall-be- invalidated-if the applicant fails to establish-that-the-law school graduation requirements were completed before the applicant submitted to the General Bar Examination. If the Board has cause to believe that an applicant has violated any of the eligibility or conduct rules relating to the Bar Examination, the Board may conduct an investigation, hold hearings, and make findings under the provisions of rule 3.
*260 4-65 Invalidation of Exam Scores. If an applicant is found by the Board after an investigation under rule 3 to be in violation of rule 4-13.1, to have made a material misstatement or omission under rule 4-13.4, or to have violated the rules of conduct in rule 4-51, the results of the Florida Bar Examination shall be invalidated. The applicant shall not be eligible to submit another work product (if in violation of rule 4-13.4) or submit to another examination for a period of 5 years from the date that the Board delivered its adverse findings or such other period of time as may be set in the Findings.